**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ZINTER HANDLING, INC.,**

                              **Plaintiff,**

        **v.**                                              **1:04-CV-500**
                                                            **(GLS-RFT)**

**GENERAL ELECTRIC COMPANY;**
**JOSEPH DECONNO; J.C. MACELROY**
**CO., INC.; and BART SPOTA,**

                              **Defendants.**

**J.C. MACELROY CO., INC.; and BART**
**SPOTA,**

        **Cross-Claimants/Defendants,**

        **v.**

**GENERAL ELECTRIC COMPANY; and**
**JOSEPH DECONNO,**

        **Cross-Claimants/Defendants.**
_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PLAINTIFF:**[1]

Berger, DuCharme Law Firm      JOSEPH C. BERGER, ESQ.

_____

[1]John B. DuCharme, Esq., who filed papers and appeared for oral argument on the underlying motions, has not filed a notice of appearance.  *See* N.D.N.Y. L.R. 83.2(a).  He is hereby directed to do so within 14 days.

10 Maxwell Drive, Suite 205
Clifton Park, NY 12065

**FOR THE DEFENDANTS:**

Bond, Schoeneck Law Firm          EDWARD C. CONAN, ESQ.
One Lincoln Center                WILLIAM E. REYNOLDS, ESQ.
Syracuse, NY 13202

Pennock, Breedlove Law Firm       CARRIE MCLOUGHLIN NOLL, ESQ.
1407 Route 9, Nine North
Building 4, 2nd Floor
Clifton Park, NY 12065

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

### I. Introduction

Plaintiff Zinter Handling, Inc. (Zinter) commenced this suit alleging

violations of section 43 of the Lanham Trade-Mark Act, 15 U.S.C. § 1501 *et*

*seq.*, and pendent state-law claims for unfair competition, breach of

contract, tortious interference with contract, tortious interference with

prospective economic advantage, conversion, fraud, and defamation.

Pending are: (1) defendant General Electric Company's (GE) motion to

dismiss, under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil

Procedure, Zinter's fourth, fifth, and seventh counts, alleging tortious

interference with contract, tortious interference with prospective economic advantage, and fraud, respectively; and (2) defendant J.C. MacElroy's (MacElroy) cross-motion to dismiss, under Rule 12(c),[2] Zinter's fourth and fifth counts.[3]  For the reasons that follow, the motions are granted in part and denied in part.

## II. Procedural Background

Zinter commenced this action on May 6, 2004.  *Dkt. No. 1.*  On July 26, GE and MacElroy filed their motion to dismiss and answer, respectively.  *Dkt. Nos. 14, 15.*  On August 16, Zinter responded to GE's motion, while MacElroy filed its cross-motion to dismiss.  *Dkt. Nos. 18, 19.*  Zinter responded to MacElroy's motion on August 20, and GE filed its reply on August 23.  *Dkt. Nos. 20, 21.*  Oral argument was heard on September 16, 2004, and decision was reserved.  *Dkt. Nos. 22, 23.*

## III. Facts

As alleged in the complaint, the facts are as follows.  Zinter, recognized as a leader in the overhead crane lifting industry, has been

---

[2]MacElroy's post-answer Rule12(b)(6) motion is deemed to have been brought under Rule 12(c).

[3]While the motions are also nominally brought on behalf of the individual co-defendants Joseph DeConno (by GE) and Bart Spota (by MacElroy), the counts in question are against GE and MacElroy only, and the court will refer to the latter as moving parties.

manufacturing various cranes and other customized material handling systems, and has been providing related training, consulting and testing services since 1977. *Compl. ¶¶ 12-14, Dkt. No. 1.* Zinter had provided similar services to GE since the late 1970s. *Id. ¶ 15.* In 1988, GE gave Zinter a generic "shell drawing" outlining its needs for a new type of overhead crane. *Id. ¶ 16.* That same year, Zinter designed and built for GE the first of its kind between-running overhead turbine enclosure bridge crane. *Id. ¶ 18.* From 1988 to 2003, Zinter delivered hundreds of these cranes to GE pursuant to purchase orders. *Id. ¶ 20.* At various times, at GE's request, Zinter supplied drawings of the new cranes. *Id. ¶ 21.* Each drawing contained an "approval" provision stating that the drawings were the proprietary information of Zinter.[4] *Id. ¶ 22.* This provision required GE to acknowledge Zinter's proprietary interest and to agree not to reproduce Zinter's drawing without prior written permission. *Id. ¶ 23.* Over the years, several GE representatives signed the approval provision upon receipt of the drawings, thereby acknowledging Zinter's ownership of the drawings and equipment designs, and prohibition of any reproduction thereof. *Id. ¶*

---

[4]Specifically, the provision stated that the "drawing shall not be reproduced in part or in whole or used in any way without written permission. Equipment Design and concept is the exclusive property of Zinter ...." *Compl. Ex. A, Dkt. No. 1.*

*24.*

In 1997, two GE representatives requested from Zinter information on duplicating the crane drawings. *Id. ¶ 26.* Zinter's president informed both representatives that the drawings were proprietary information and could not be reproduced without Zinter's express consent. *Id.* In July 1999, Zinter discovered that GE had duplicated the drawings, removed Zinter's name and logo, replaced them with GE's name and logo, and used the drawings to obtain a quote from a Zinter competitor. *Id. ¶¶ 27, 28.* Zinter's president complained to GE's purchasing agent Gerry Morris and supervisor Jody Markopoulos, indicating that GE's actions were in direct breach of the terms of the signed agreements. *Id. ¶ 29.*

In November 1999, Zinter sent a copy of the signed "approval" language found on its drawings to Markopoulos. *Id. ¶ 30.* Thereafter, from 1999 until July 2003, Zinter believed that GE had ceased the dissemination of its proprietary information. *Id. ¶¶ 30-32.* In February 2003, Zinter's president wrote two letter-memoranda reiterating that GE would protect Zinter's proprietary information. *Id. ¶ 33.* Two GE representatives signed the letters acknowledging the agreement. *Id. ¶¶ 34-37.* During a March 2003 visit to Zinter's plant, defendant DeConno, GE China Sourcing

5

Leader, indicated that the cranes were going to be produced in China and that Zinter "better not make waves."  *Id. ¶¶ 38-41.*  DeConno threatened Zinter to keep quiet about the cranes, or else he would make sure it did not get any more work from GE.  *Id. ¶ 42.*

In July 2003, Zinter's president became aware of a GE request for proposals bearing GE's name and logo, which was based on Zinter's proprietary drawing and design.  *Id. ¶¶ 43-44.*  Zinter immediately protested GE's misappropriation and use of its drawing.  *Id. ¶ 45.*  Zinter informed GE that it planned to contact another manufacturer, MacElroy, to make it aware that GE's drawing was the proprietary information of Zinter.  *Id. ¶¶ 45-46.*  Zinter then contacted defendant Spota, representative for MacElroy, and informed him that the drawing was its proprietary information and that permission to use it was required.  *Id. ¶ 47.*  Nonetheless, MacElroy continued its manufacturing operations.  *Id. ¶ 48.*  Thereafter, Zinter received an email from GE listing the names of manufacturers, including MacElroy, that needed to provide documentation for their products to GE. *Id. ¶ 49.*  MacElroy, which was required to provide documentation concerning overhead turbine enclosure cranes, was thus continuing to build cranes based on Zinter's drawing.  *Id. ¶ 50.*

6

In October 2003, GE deactivated Zinter's vendor code after 25 years of service, accusing it of "unethical business practices." *Id. ¶¶ 51-52*. Zinter claims that the actual reason for its deactivation was DeConno's threat that it would not get any more work from GE if it did not "shut up about those little cranes." *Id. ¶ 52*. In addition, GE informed Zinter that the phone call to MacElroy was improper because pricing matters were discussed, an accusation which Zinter denied. *Id. ¶¶ 53-54*. Thereafter, DeConno stated on several occasions that Zinter had been deactivated for "integrity concerns." *Id. ¶ 55*. More specifically, DeConno claimed that Spota had "made assertions of improper conduct." *Id. ¶ 57*. While DeConno also stated that Spota had "something to gain by lying," GE nonetheless deactivated Zinter and continued to make statements concerning the latter's "unethical business practices." *Id.*

In November 2003, prior counsel for Zinter sent a letter to Spota and MacElroy asserting intellectual property rights in the crane drawings. *Id. ¶ 58*. The letter cautioned that the drawings used by MacElroy to produce "certain special design overhead cranes" were protected, and requested that MacElroy cease ongoing construction or sales of these overhead cranes. *Id.; Compl. Ex. C*. MacElroy responded that operations would go

on as normal and continued to produce cranes based on Zinter's drawings and specifications.  *Compl. ¶¶ 59-60*.

DeConno has stated publicly to GE employees and to Zinter's GE customers inside the GE plant that Zinter was deactivated for engaging in "price-fixing" and "rigging bids."  *Id. ¶ 61*.  In addition, GE told Zinter's customers within the GE plant not to place any new orders with Zinter.  *Id. ¶ 62*.  GE directed other GE suppliers not to engage in any business dealings with Zinter if the product would ultimately be delivered to GE.  *Id. ¶ 63*.  GE also disseminated an email to Zinter's customers inside the plant listing Zinter's competitors and directing where business formerly given to Zinter should be sent.  *Id. ¶ 64*.

## IV.  Discussion

### A.    Standard of Review - Motion to Dismiss

The same familiar standard on a motion to dismiss under Rule 12(b)(6) applies to a motion for judgment on the pleadings under Rule 12(c).  *See King v. Am. Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002). Rule 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted."  In other words, the court should dismiss the complaint pursuant to Rule 12(b)(6) if

8

"it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint which would entitle him to relief."  *Phelps v. Kapnolas*, 308 F.3d 180,184 (2d Cir. 2002) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "The task of the court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).  Therefore, in reviewing a motion to dismiss, a "court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Phelps*, 308 F.3d at 184 (quoting *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)).

## B.   Analysis

### 1.   *Tortious Interference with Contract*

Under New York law,[5] "[t]ortious interference with contract requires [1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional

---

[5]In considering Zinter's pendent state law claims, the court applies the substantive law of the forum state, in this case New York.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996).

procurement of the third-party's breach of the contract without justification,

[4] actual breach of the contract, and [5] damages resulting therefrom ...."

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)

(citations omitted).  It is well established that "a central requirement for this

cause of action ... is the existence of a valid, enforceable contract between

the plaintiff and a third party."  *Scutti Enters., LLC v. Park Place Entm't*

*Corp.*, 322 F.3d 211, 215 (2d Cir. 2003) (citations omitted).  Another

necessary component is the actual breach of the contract.  *D'Andrea v.*

*Rafla-Demetrious*, 146 F.3d 63, 65 (2d Cir. 1998) (collecting New York

cases).

(a)   Defendant GE

In relevant part, the complaint alleges that GE has interfered with

Zinter's "contractual relations" with "GE suppliers."[6]  GE claims that Zinter

─────────────────

[6]The complaint also alleges that GE interfered with Zinter's "contractual relations" with "customers located within the GE facility."  In its moving memorandum, GE argues that the vague reference to "customers . . . within the GE facility" is insufficient and fails because it refers to GE itself.  Zinter has presented no argument in opposition.  Moreover, during oral argument, counsel for Zinter specifically referred solely to outside suppliers to support Zinter's claim.  *See Hearing Transcript (Hg. Tr.), pp. 14-15, Dkt. No. 23*.  Because a tortious interference claim cannot be maintained against a party to the subject contract, *see Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996); *Bradford v. Weber*, 525 N.Y.S.2d 968, 970 (3d Dep't 1988) ("a party to a contract cannot be held liable for tortious interference with that contract"), and based on Zinter's failure to offer any argument in opposition, the court deems GE's point conceded and will only consider Zinter's remaining allegations vis-à-vis third-party outside suppliers. Parenthetically, even if the court were to consider it, Zinter's allegation would fail.  The complaint alleges that GE instructed the "customers" to complete all existing obligations and not place any orders thereafter.  This allegation is insufficient to show actual

has failed to allege facts satisfying the basic elements of this claim.  *GE Mem., pp. 4-5, Dkt. No. 15*.  Specifically, it argues that Zinter has failed to allege that the "GE suppliers" actually breached any contract.

In this case, Zinter has failed to allege the existence of a contract with the "suppliers" in question.  The complaint merely asserts that Zinter has "business dealings" with these third parties.[7]  However, "an allegation of interference with 'contractual relations' is insufficient without reference to a valid existing contract with a third party, or any terms of the contract." *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 176 (W.D.N.Y. 2003) (citations omitted).  Thus, absent a reference to an existing contract or any of its terms, the contract element is insufficiently pled.[8]  Similarly, the complaint merely alleges that GE directed the suppliers not to engage in business dealings with Zinter if the product would ultimately go to GE. Zinter has not alleged any additional facts supporting breach of an actual contract by those "suppliers."  Accordingly, the complaint fails to allege

---

breach.  To the contrary, it shows that the "customers" were to fulfill, rather than terminate, any existing contractual obligations.  Zinter has failed to allege any actual breach in this respect, or, even more importantly, the existence of any contract.

[7]Contrary to counsel's representation during oral argument, the complaint does not allege existing contracts with these suppliers.

[8]Zinter's argument that its alleged business dealings with third parties support an inference of existing contracts is insufficient and fails in light of the above standard.

those requisite elements of a claim for tortious interference with contract.

Therefore, GE's motion to dismiss Zinter's fourth count for tortious interference with contract is granted, with leave to replead.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead").

(b)    Defendant MacElroy

Zinter's complaint also alleges that MacElroy tortiously interfered with Zinter's contractual relationship with GE.  MacElroy contends that this claim fails because Zinter has not alleged the existence of a valid contract that was breached, and that MacElroy "intentionally and improperly procured" the breach.  *MacElroy Mem., pp. 2-3, Dkt. No. 19*.

Zinter has failed to allege the existence of a valid contract with respect to its claim against MacElroy.[9]  The complaint only asserts a

_____

[9]The complaint contains a contract claim against GE (not presently before the court) based on its breach of the agreement to protect Zinter's proprietary drawings.  At oral argument, counsel for Zinter proposed this contract as the basis for the claim against MacElroy.  *Hg. Tr. at 15-16*.  The court finds this argument unpersuasive.  Notably, the complaint does not allege that, and counsel did not elaborate how, MacElroy procured GE's breach of this contract.  Zinter's proposed rationale cannot be reconciled with even the most favorable construction of its allegations, which reveal no connection between MacElroy's alleged false representation to GE and the latter's misuse of Zinter's proprietary information.  To the contrary, the allegations in the complaint show that MacElroy's representations were made long after GE had already breached its alleged obligation to protect Zinter's proprietary information.  Similarly unpersuasive is counsel's second theory that a contract between GE and Zinter existed based on separate GE crane purchase orders.  Here, Zinter has not alleged

"contractual relationship" with GE.  *Compl.  ¶¶ 95, 99*.  As already noted, mere reference to "contractual relations" is insufficient.[10]  *Tran*, 287 F. Supp. 2d at 176.   The complaint alleges that GE, based on MacElroy's assertions of integrity concerns about Zinter, deactivated Zinter from its vendor list.  However, it neither alleges that this deactivation itself constituted a breach of contract by GE, nor that GE had any obligation to keep Zinter's vendor code on its list.  Thus, it cannot be reasonably inferred that GE breached any contract by deactivating Zinter's vendor code.  Consequently, Zinter has failed to allege both the existence of a valid contract and a breach thereof.[11]

Based on the above, MacElroy's motion to dismiss Zinter's fourth count for tortious interference with contract is granted, with leave to replead.

─────────────────────

that MacElroy caused GE to breach its obligations under any such orders.

[10]In its opposition brief, Zinter again proposes that the alleged "ongoing contractual relationship" with GE is sufficient.  Again, this contention fails.

[11]MacElroy's alternative argument, that Zinter has failed to plead intentional and improper procurement, lacks merit.  Zinter has alleged that MacElroy's false assertions of improper conduct were undertaken maliciously and willfully.  *Compl. ¶¶ 56, 57, 100, 102*. However, the determination that Zinter has failed to allege either an existing contract or a breach renders this point moot.

2. _Tortious Interference with Prospective Business Relations_[12]

A valid contract is not required in a claim for tortious interference with business relations. *See Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 205 (2d Cir. 1998) (citations omitted).   To state a claim for tortious interference with prospective business relations under New York law, a complaint must allege that: "[1] the plaintiff had business relations with a third party; [2] the defendant[] interfered with those business relations; [3] the defendant[] acted for a wrongful purpose or used dishonest, unfair, or improper means; and [4] the defendant['s] acts injured the relationship."   *Scutti*, 322 F.3d at 215 (citations omitted).

"[A] plaintiff must demonstrate that the defendant's interference with its prospective business relations was accomplished by 'wrongful means' or that [the] defendant acted for the sole purpose of harming the plaintiff." *Snyder v. Sony Music Entm't, Inc.*,  684 N.Y.S.2d 235, 239 (1st Dep't 1999) (citations omitted).  Under New York law, "wrongful means" include

---

[12]Zinter's count is titled "Tortious Interference with Prospective Economic Advantage." The specific title of this tort is irrelevant. *PPX Enters. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 269 (2d Cir. 1987) (citation omitted) (noting that whether the plaintiff is alleging "tortious interference with: prospective economic advantage, beneficial business relations, prospective business advantage, and business or economic relations ... the elements necessary to establish such a claim remain constant"), *abrogated on other grounds as stated in Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 206 n.9 (2d Cir. 1998), *and Scutti*, 322 F.3d at 216.

"'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract[.]'"  *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 624 (1996) (citation omitted).

    (a)    <u>Defendant GE</u>

GE argues that Count Five against it should be dismissed because Zinter has failed to allege that GE used wrongful means or acted maliciously.  *GE Mem. at 6-8.*[13]  In this case, Zinter's complaint asserts that the defendants' actions were undertaken "maliciously, willfully, wantonly and in reckless disregard of [its] rights."  Courts in this Circuit have found similar allegations sufficient.  *See AIM Int'l Trading, L.L.C. v. Valcucine S.p.A., IBI, L.L.C.*, No. 02 Civ. 1363(PKL), 2003 WL 21203503, at *7 (S.D.N.Y. May 22, 2003) (citing *MDC Corp., Inc. v. John H. Harland Co.*, 228 F. Supp. 2d 387, 397-98 (S.D.N.Y. 2002) (finding sufficient allegation that defendant "acted maliciously and used fraudulent or illegal means");

---

[13]GE also argues that Zinter's failure to allege a specific contract which it had a concrete prospect of consummating is fatal to its claim.  *See GE Reply Mem. at 5, Dkt. No. 21.*  Because this argument is raised for the first time in GE's reply brief, the court declines to consider it.  *See Estate of Morris ex rel. Morris v. Dapolito*, 297 F. Supp. 2d 680, 689 n.7 (S.D.N.Y. 2004).  Moreover, it would be without merit.  *See Hannex*, 140 F.3d at 205.

*Preferred Health Care, Ltd. v. Empire Blue Cross & Blue Shield*, No. 94

Civ. 9326 (RPP), 1997 WL 160489, at *3 (S.D.N.Y. Apr. 7, 1997) (finding

sufficient the words "with malice")).

GE argues that its actions - directing the various "GE suppliers" not to

engage in future business with Zinter - were lawful and do not amount to

more than mere persuasion.  Although in its brief, Zinter claims that GE

used economic pressure to compel suppliers not to deal with Zinter, no

such allegation is evident from the complaint.  However, the complaint

does allege that GE (1) disseminated the names of Zinter's competitors

and (2) stated that Zinter had been terminated due to questionable

business practices.  Taking as true the allegation that Zinter never

attempted to influence the bidding process, GE's act of informing various

third parties that Zinter had engaged in questionable business conduct can

be interpreted as a misrepresentation, as it was based on information that

GE allegedly knew was false.  From this perspective, the above actions by

GE can be interpreted as misrepresentations satisfying the "wrongful

means" requirement at the notice-pleading stage of the case.  GE also

argues that it did not act with the sole intention to harm Zinter.  It claims

that its conduct was based in part on the information about Zinter's

questionable business practices received from MacElroy, suggesting that it had a legitimate basis for its actions.  However, as already noted above, GE allegedly knew that this information was untrue.  Therefore, GE's reliance on this element as justification for its actions is misplaced.  Moreover, the complaint does allege that GE retaliated against Zinter for the latter's attempt to protect its proprietary rights in the drawings.

Therefore, GE's motion to dismiss Zinter's fifth count for tortious interference with prospective business relations is denied.

(b)    Defendant MacElroy

MacElroy claims that Count Five against it should be dismissed because Zinter has not alleged (1) any intentional conduct on its part causing Zinter's code deactivation or (2) any facts establishing malice on MacElroy's part.  MacElroy points to the apparent discrepancy in Zinter's alleged causal relation between the statements made by MacElroy to GE and GE's decision to deactivate Zinter.  *See Compl.  ¶ 52*.  However, Zinter is entitled, under Rule 8, to assert alternative theories of liability at the pleading stage.  The complaint alleges that MacElroy made false assertions regarding Zinter's integrity to GE, which caused Zinter's termination.  *See Compl.  ¶¶ 56, 100, 106*.  These allegations are sufficient

to constitute wrongful means at this stage.  Similarly, for the reasons already stated, Zinter has sufficiently alleged malice.

Therefore, MacElroy's motion to dismiss Zinter's fifth count for tortious interference with prospective business relations is denied.

### 3.   *Fraudulent Misrepresentation and Fraudulent Concealment Claim against GE*

GE argues that Zinter's seventh count, alleging fraudulent misrepresentation and/or concealment, should be dismissed as duplicative of Zinter's count for breach of contract.  *GE Mem. at 8-11.*

"To state a claim for fraudulent misrepresentation under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004) (internal quotation marks, citation omitted).[14]

Here, GE does not specifically argue that Zinter has failed to plead

---

[14]Similarly, "fraudulent concealment requires proof of: (1) failure to discharge a duty to disclose; (2) an intention to defraud, or scienter; (3) reliance; and (4) damages." *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 90-91 (2d Cir. 2005) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 152 (2d Cir. 1993)).  Thus, with the exception of their respective first elements, the two torts are indistinguishable.

fraud with particularity.[15]  Instead, it contends that the fraudulent acts

alleged by Zinter - that GE representatives fraudulently signed the

drawings and subsequent letters of agreement with no intention to keep

their promises not to reproduce the drawings - are in fact the same

allegations as those forming Zinter's claim for breach of contract.  Zinter

contends that these promises were factual misrepresentations made with

no intention of being honored and intending to defraud Zinter.

"It is well settled that mere allegations of breach of contract do not

give rise to a claim for fraud or fraudulent inducement."  *Ohm Remediation*

*Servs. Corp. v. Hughes Envtl. Sys., Inc.*, 952 F. Supp. 120, 122 (N.D.N.Y.

1997) (alteration, internal quotation marks, and citations omitted); *see D.S.*

*Am. (East), Inc. v. Chromagrafx Imaging Sys., Inc.*, 873 F. Supp. 786, 795

(E.D.N.Y. 1995).  "General allegations that [the] defendant entered into a

contract while lacking the intent to perform it are insufficient" to support a

claim for fraudulent misrepresentation or concealment.  *N.Y. Univ. v. Cont'l*

*Ins. Co.*, 87 N.Y.2d 308, 318 (1995); *TVT Records*, 412 F.3d at 91 ("[T]he

---

[15]Under Rule 9(b), fraud must be pled with particularity, "which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Eternity Global*, 375 F.3d at 187 (internal quotation marks and citation omitted).

intention to breach does not give rise to a duty to disclose.  Instead, the

duty to disclose must exist separately from the duty to perform under the

contract.") (citing, *inter alia*, *Bridgestone/Firestone, Inc. v. Recovery Credit

Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)).  "A fraud claim should be

dismissed as redundant when it merely restates a breach of contract claim,

*i.e.,* when the only fraud alleged is that the defendant was not sincere when

it promised to perform under the contract."  *First Bank of Americas v. Motor

Car Funding, Inc.*, 690 N.Y.S.2d 17, 20-21 (1st Dep't 1990) (citation

omitted).

The Second Circuit has consistently held that generally, an allegation

that a party entered into a contract with no intention of performing that

contract is insufficient to support a fraud claim under New York law.  *See

TVT Records*, 412 F.3d at 91; *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d

387, 401 (2d Cir. 2001) (holding that representation which "is merely a

statement of intent to perform under the contract cannot constitute fraud");

*Bridgestone/Firestone*, 98 F.3d at 19-20 (dismissing fraud claim where

alleged misrepresentations "amount to little more than intentionally-false

statements ... indicating [defendant's] intent to perform under the contract");

*cf. Grappo v. Alitalia Linee Aeree Italiane*, 56 F.3d 427, 434 (2d Cir. 1995)

20

(collecting New York cases) (holding that plaintiff had stated valid fraud claim where defendant had engaged in fraud independent of the contract, but acknowledging that "[a] cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing ... [a]ctionable relief hangs on breach ... relief does not lie for fraud resting on an intention not to perform").[16]

The only limited exception arguably applicable here[17] is where the defendant misrepresented a material fact constituting fraudulent conduct separate from or collateral to the lack of intention to perform. *See Grappo*,

_____

[16]In its opposition, Zinter cites *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986) for the proposition that a promise made with a preconceived intention not to perform it constitutes a misrepresentation.  However, *Deerfield* has been distinguished by the Second Circuit on the grounds that the fraud claim there was based on a misrepresentation extraneous to the contract.  *See Bridgestone/Firestone*, 98 F.3d at 20. Moreover, *Deerfield* and a similar line of cases have been deemed by courts in this Circuit as fact-specific exceptions to the general rule in New York.  *See, e.g., Marriott Int'l, Inc. v. Downtown Athletic Club of N.Y. City, Inc.*, No. 02 Civ. 3906 MBM, 2003 WL 21314056, at *6 n.3 (S.D.N.Y. June 9, 2003); *Cougar Audio, Inc. v. Reich*, No. 99 Civ. 4498 LBS, 2000 WL 420546, at *6 n.4 (S.D.N.Y. Apr. 18, 2000).

[17]When a plaintiff alleges that a defendant entered into an agreement that it intended to breach, a fraud claim lies if (1) the defendant owes a legal duty to the plaintiff "separate from the duty to perform under the contract"; (2) the defendant makes a fraudulent misrepresentation that is "collateral or extraneous" to the alleged contract; or (3) the plaintiff seeks "special damages that are caused by the misrepresentation and unrecoverable as contract damages."  *Bridgestone/Firestone*, 98 F.3d at 20.  The first exception is not implicated here as Zinter has no viable claim that GE owed it an independent legal duty, such as one arising from a fiduciary relationship.  *See Draskicevic v. Entersport Mgmt., Inc.*, No. 03 Civ. 8447 (DLC), 2004 WL 1575393, at *2 (S.D.N.Y. July 15, 2004).  The third exception is similarly inapplicable, as Zinter has not specifically pled any special damages distinct from those flowing from its breach of contract claim.  *See id.* (citation omitted); *Marriott*, 2003 WL 21314056 at *6 (citations omitted).

56 F.3d at 434; *First Bank of Americas*, 690 N.Y.S.2d at 21.  Here, Zinter

argues that its "fraud claim is premised on allegations that at the time [GE]

made representations of fact to [Zinter,] it had no present intention [to

perform] ...."  *Zinter  Mem. at 17, Dkt. No. 18*.  Zinter's attempt to

characterize the above as a misrepresentation of fact is misplaced.  The

only misrepresentation alleged in the complaint is that GE promised not to

reproduce the drawings, which does not amount to a misrepresentation of

a material fact separate from or collateral to the alleged intent not to

perform the contractual obligation.  Zinter has not alleged that GE

represented any other facts with respect to this promise.  Consequently,

Zinter's fraudulent misrepresentation claim is duplicative of its breach of

contract claim and fails as a matter of law.[18]

Therefore, GE's motion to dismiss Zinter's seventh count for

fraudulent misrepresentation and/or concealment is granted.  Because this

count is duplicative, and because Zinter has not alleged fraudulent conduct

---

[18]GE also argues, unopposed, that Zinter's fraudulent concealment claim, to the extent one can be found, amounts to nothing more than an allegation that GE did not disclose its own alleged breach of the contract.  "In the context of a business transaction, the duty to disclose arises where a party, with a duty to be complete, has made only a partial or ambiguous statement, or 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" *TVT Records*, 412 F.3d at 91 (quoting *Brass*, 987 F.2d at 150) (additional citation omitted).  As GE points out, Zinter has not alleged any special or fiduciary relationship sufficient to impose on GE a duty to disclose.  Accordingly, Zinter's fraudulent concealment claim also fails.

that is collateral to the breach of contract claim, it is dismissed with prejudice.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that GE's motion to dismiss Counts Four and Seven is **GRANTED** and said Counts against GE are **DISMISSED**; it is further

**ORDERED** that MacElroy's motion to dismiss Count Four is **GRANTED** and said Count against MacElroy is **DISMISSED**; it is further

**ORDERED** that GE's motion to dismiss Count Five is **DENIED**; it is further

**ORDERED** that MacElroy's motion to dismiss Count Five is **DENIED**; it is further

**ORDERED** that Zinter shall file, if it so chooses, its Amended Complaint within 20 days of this Decision and Order; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order upon the parties.

**IT IS SO ORDERED.**

August 2, 2005
Albany, New York

United States District Court Judge

23